UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BELINDA MYERS et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-00700-APM |
| ) | |
| DISTRICT OF COLUMBIA HOUSING ) | |
| AUTHORITY et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

It is common these days for law firms to tout their work on their websites. Plaintiffs' counsel did so in this case after filing the Complaint. Their website announced that the firm had filed a lawsuit against Defendant Tifaqur Quantay Oliver, accusing him of sexually harassing Plaintiffs in violation of the Fair Housing Act and the Fourteenth Amendment's Equal Protection Clause. Taking offense to the website posting, Oliver filed a Counterclaim, in which he asserts that the posting was defamatory and cast him in a false light and that Plaintiffs—not their counsel—are libel for the tortious acts. Plaintiffs now move to dismiss the Counterclaim. For the reasons that follow, the court grants Plaintiffs' motion to dismiss.

**II.   BACKGROUND**

On March 10, 2020, Plaintiffs filed a Complaint alleging that Defendants D.C. Housing Authority and Oliver violated the Fair Housing Act and the Fourteenth Amendment's Equal Protection Clause. Compl., ECF No. 1 [hereinafter Compl.], at 16–17. Specifically, Plaintiffs allege that on multiple occasions, Oliver sexually harassed Plaintiffs by "explicitly and implicitly

offer[ing] material housing benefits to [D.C. Housing Authority] tenants in exchange for sex." *Id.* ¶ 4.

About two weeks after filing the Complaint, Plaintiffs' counsel, Relman Colfax PLLC ("Relman"), announced the lawsuit on its website (the "Relman Post"). *See* Pls.' Mot. to Dismiss Def. Oliver's Am. Counterclaims, ECF No. 32 [hereinafter Pls.' Mot.], Ex. 1, ECF No. 32-2 [hereinafter Pls.' Ex. 1]. The Relman Post, entitled "Public Housing Tenants Sue D.C. Housing Authority, Property Manager for Sexual Harassment," was published under the "News & Updates" section of Relman's website. *See* Pls.' Mot., Mem. in Supp. of Pls.' Mot. to Dismiss Def. Oliver's Am. Counterclaims [hereinafter Pls.' Mem.], ECF No. 32-1, at 3. As the title suggests, the Post announces that Relman is representing Plaintiffs in an action against the D.C. Housing Authority and Oliver. The first paragraph of the Post states:

> Relman Colfax has filed a federal lawsuit against the D.C. Housing Authority ("DCHA") and its property manager, Quantay Oliver, who DCHA permitted to sexually harass women who lived at DCHA properties for years, including repeatedly badgering them to perform sexual favors and offering them money in exchange for sex. The complaint alleges that DCHA and Mr. Oliver created a hostile housing environment and permitted quid pro quo sexual harassment in violation of the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment.

Pls.' Ex. 1. Relman provided a link to the Complaint at the end of the statement. *Id*.

Oliver then filed a Counterclaim, which he later amended. It alleges that the Relman Post "targeted [an] audience consisting of hundreds of persons," harming his professional and familial reputation, Def.'s Am. Counterclaim, ECF No. 29 [hereinafter Def.'s Counterclaim], ¶¶ 13, 16, 22, and that the Post "denigrate[s] and impugn[s] [his] character as a longstanding married man, devoted father, and highly respected manager in the workplace and community where the [Plaintiffs] reside," *id.* ¶ 6.

### III.   LEGAL STANDARD

Plaintiffs have moved to dismiss Oliver's Counterclaim for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). *See* Pls.' Mot. Such a "motion tests the legal sufficiency of a claim." *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 344–45 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating a Rule 12(b)(6) motion, the court must "accept the plaintiff's factual allegations as true," *Sickle*, 884 F.3d at 345 (internal quotation marks omitted), and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### IV.   DISCUSSION

Plaintiffs advance three arguments in support of their motion. *See* Pls.' Mem. at 1–2. First, they argue that Oliver's Counterclaim is foreclosed by the fair report privilege because the Relman Post is an accurate summary of "pleadings or judicial proceedings." *Id.* at 1. Second, Plaintiffs assert that Oliver's Counterclaim must be dismissed because "he failed to allege facts indicating that the statements are false—a required element of his claims." *Id.* at 2. And third, Plaintiffs

3

maintain that because they did not publish the alleged defamatory statements—their counsel did—they cannot be held liable for their counsel's actions. *Id.* As the court finds that Oliver's Counterclaim is defeated by the fair report privilege and fails to state a claim, it does not reach Plaintiffs' third argument regarding attribution of the Post.

### A. The Fair Report Privilege

Because the "issue of privilege antecedes the question of" defamation, *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990), the court begins by considering whether the fair report privilege forecloses Oliver's libel and false light claims, *see id.* at 518 ("[T]he same privileges applicable to libel claims may be invoked to defend false light claims.").

"There is no question that, as a matter of District of Columbia law, publications do enjoy a conditional fair report privilege." *Dameron v. Washington Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) (citing *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78 (D.C. 1980)). "The conditional immunity that applies to the publication of fair and accurate reports of official proceedings is an exception to the common law rule that one who repeats or republishes a defamation uttered by another 'adopts' it as his own." *Id.* The fair report privilege serves the public's interest "in having information made available to it as to what occurs in official proceedings," RESTATEMENT (SECOND) OF TORTS § 611 cmt. a. (AM. LAW INST. 1977) [hereinafter RESTATEMENT (SECOND)], and reflects the First Amendment's protection for "accurate account[s] of judicial proceedings," *see Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1299 (D.C. Cir. 1988) (noting the First Amendment protects "the publication of truthful information contained in official court records open to public inspection" (internal quotation marks omitted)).

For the privilege to attach, the author of a statement must "clear[] two major hurdles." *Phillips*, 424 A.2d at 89. The publication must be both fair and accurate and properly attributed

4

to a qualified government source. *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 26 (D.C. Cir. 2010). Oliver contends that the Relman Post clears neither hurdle. The court disagrees.

### 1.     *Fair and Accurate Report*

The fair report privilege bars defamation claims against "full and accurate" publications of official government proceedings. *Curtis Publ'g Co. v. Vaughn*, 278 F.2d 23, 29 (D.C. Cir. 1960) (internal quotation marks omitted). A "full" publication recites the "essential and important features" of the underlying document. *Id.* (internal quotation marks omitted). Further, where it is "apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings," the publication includes the underlying document's essential and important features and thus qualifies for the privilege. *Dameron*, 779 F.2d at 739. Because the fair report privilege's "intended beneficiary . . . is the public," *id.*, the court must ensure that the publication's recitation of the underlying document's "essential and important features" is "substantially accurate," *Curtis Publ'g Co.*, 278 F.2d at 29. A report is substantially accurate where it is clear from the publication's "overall context" that an "average reader" would understand the publication as a "report on or summary of an official document or proceeding." *Dameron*, 779 F.2d at 739; *see also White*, 909 F.2d at 527 (explaining that the fair report privilege requires that the publication present the information in "such a manner that the average reader would be likely to understand the communication to be a report on . . . an official document or proceeding"); *Curtis Publ'g Co.*, 278 F.2d at 29 (explaining that a publication need not reproduce "every detail" of the underlying proceedings for the court to determine that it is "substantially accurate").

Oliver argues that the fair report privilege does not protect the statement at issue here because the Relman Post is an unfair and inaccurate description of Plaintiffs' Complaint.

5

*See* Def.'s Opp'n to Pls.' Mot. to Dismiss, ECF No. 33 [hereinafter Def.'s Opp'n], at 7. The portion of the Post he finds most offensive is as follows: DCHA "permitted [Oliver] to sexually harass women who lived at DCHA properties for years, including repeatedly badgering them to perform sexual favors and offering them money in exchange for sex." *See id.* at 3 (emphasis omitted) (internal quotation marks omitted). He argues that the average reader would not understand the Relman Post to summarize a judicial pleading because it recounts Plaintiffs' claims without identifying them as allegations and thus represents the claims as facts. *See id.* at 7. The omission of the word "alleged" in the Post's first sentence, Oliver contends, "creates an absolute, predicate, defamatory accusation and inference" that the rest of the document cannot overcome. *Id.* He also complains that neither "[t]he number of women, properties, nor years is mentioned." *See id.*

When assessing the applicability of the fair report privilege, the court must read the whole Post in context, *see Curtis Publ'g Co.*, 278 F.2d at 26 (explaining that reading and construing the words as the average reader would requires evaluating the "whole item" and paying attention to "context" (internal quotation marks omitted)), in order to determine the average reader's understanding of the publication, *Dameron*, 779 F.2d at 739; *see also Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 258 (D.D.C. 2013) (rejecting claimant's misleading characterization and "cherry-picked" quotation of a statement that was not defamatory when "[v]iewed in context" with the surrounding sentences). Thus, the court cannot read the first sentence of the Relman Post in isolation, as Oliver encourages.

Viewed in context and looking to the whole statement, the Relman Post fairly and accurately describes the allegations in Plaintiffs' Complaint. First, the publication is posted on Relman's webpage under the "News & Updates" tab. Pls.' Ex. 1. The context of the "News & Updates" tab

and Relman's website generally frames the information as relating to Relman's active litigation. Second, the headline clearly reads, "Public Housing Tenants *Sue* D.C. Housing Authority, Property Manager for Sexual Harassment." *Id.* (emphasis added). The average reader would understand Relman's use of the word "sue" to reference a lawsuit. Third, although the Post's first sentence does not contain the word "allege," it begins by stating that "Relman Colfax has filed a federal lawsuit." *Id.* What's more, the word "allege" is used multiple times throughout the rest of the Post. *Id.* For example, the Post's second sentence begins, "The complaint alleges"; likewise, the second paragraph states, "Ms. Myers and Ms. Thomas allege." *Id.* Finally, the Post concludes with a link to the Complaint itself, which further provides the reader with context that the Post is summarizing allegations that have not yet been proven. *Id.* Thus, when reading the Relman Post in its entirety, it can be reasonably understood only as a summary of Plaintiffs' Complaint.

And that summary is fair and accurate. Plaintiffs' Complaint contains multiple allegations that support the Post's assertion that DCHA "permitted [Oliver] to sexually harass women who lived at DCHA properties for years, including repeatedly badgering them to perform sexual favors and offering them money in exchange for sex," *id.* For instance, Plaintiffs allege that, for "a decade," Oliver engaged in sexual harassment by "repeatedly badgering [tenants] to perform sexual favors, conditioning resolution of pending eviction proceedings or approval of home repairs on female tenants having sex with him, and offering money to DCHA tenants in exchange for sex." Compl. ¶ 2. Elsewhere, Plaintiffs say that Oliver "claimed he could help delay or prevent eviction proceedings if tenants would sleep with him, and he promised to approve needed housing repairs in exchange for sex." *Id.* ¶ 4. Other allegations are to the same effect. *See id.* ¶ 41 (claiming Oliver offered Plaintiff Myers $150 to sleep with him); *id.* ¶¶ 54–55 (describing multiple instances in which Oliver asked Myers to sleep with him to secure his assistance or cooperation in addressing

her housing needs); *id.* ¶ 68 (alleging that Oliver told Thomas he could help her avoid eviction if she slept with him); *id.* ¶ 83 (referencing Oliver's "repeated attempts to coerce Ms. Thomas into sex"). The fairness and accuracy of the Relman Post cannot be reasonably disputed.

Oliver further argues that it is improper for the court to determine how an "average reader" would understand the Post at the pleadings stage because "this court would have to step into the shoes of a reasonable juror to determine the extent to which the subject accusatory language is clear." *See* Def.'s Opp'n at 8. The court disagrees. "If after an examination of the entire article there is only one reasonable interpretation of its meaning, it is for the judge and not the jury to say whether or not the words are defamatory." *Johnson v. Johnson Publ'g Co.*, 271 A.2d 696, 697 (D.C. 1970); *see also Curtis Publ'g Co.*, 278 F.2d at 26 (holding that only publications that are "capable of two meanings, one of which would be libelous and actionable and the other not" present fact issues). That is the case here. The only reasonable interpretation of the Post is that it summarizes Plaintiffs' Complaint. Accordingly, as a matter of law, the first element of the fair report privilege is satisfied.

2. *Proper Attribution to a Qualified Government Source*

Oliver also argues that the fair report privilege cannot apply to the Relman Post because a complaint is not a qualified government source. *See* Def.'s Opp'n at 6–7. But this contention is foreclosed by the decision of the D.C. Court of Appeals in *Johnson*, 271 A.2d at 699 (holding that the fair report privilege applies to complaints and pleadings); *see also Harper v. Walters*, 822 F. Supp. 817, 824 (D.D.C. 1993) (explaining that the District "has adopted the minority rule" articulated in *Johnson* "that pleadings filed in judicial proceedings qualify as official records under the privilege even before any official judicial action is taken"). In *Johnson*, the defendant argued that the fair report privilege does not attach to pleadings "until some official action" has been taken

by the court. 271 A.2d at 698. The defendant reasoned that, if the fair report privilege applied to complaints, then a plaintiff could file a "groundless" lawsuit containing defamatory allegations and republish those allegations with impunity. *Id.* The D.C. Court of Appeals rejected that position. *Id.* The court accepted that "[t]here is always the possibility that groundless suits may be filed and immediately dismissed after the defamatory allegations have been given wide circulation." *Id.* But it did not make sense, the court explained, for it to "prevent[] the republication of what may be groundless defamatory allegations of a complaint when filed, yet allow[] such republication the moment trial begins or any other judicial action is taken." *Id.* at 698–99. Accordingly, the court held that "a qualified privilege extends to reports of charges contained in pleadings filed in court." *Id.* at 699. Oliver has cited no case calling *Johnson* into question, and in light of this precedent, the court rejects his argument that the policy concerns that undergird the fair report privilege do not support protection of statements made in complaints, *see* Def.'s Opp'n at 6–7.

    3. *Defenses to the Fair Report Privilege*

Oliver advances three additional arguments for why the fair report privilege does not apply here. First, he questions whether the privilege applies at all, as the statement at issue was made by a law firm and not the media. As he puts it, "the policy concern for this exception"—purportedly to encourage the media to publicize official records—"is not implicated because [Plaintiffs] are [not] the media." Def.'s Opp'n at 7. Second, he contends that the privilege does not apply because the statement was not a republication of statements made by someone else; rather, the law firm republished its own statements made in the Complaint. *Id.* This argument involves what is known as the "self-reporting exception" to the fair report privilege. Third, he contends that he has

overcome the privilege at the motion-to-dismiss stage by sufficiently pleading actual malice. *Id.* at 10–11. None of these arguments bars the privilege's application in this case.

a. Application of the privilege to a law firm

The fair report privilege is not limited to members of the traditional media. The *Restatement (Second) of Torts* makes this clear: the fair report privilege

> is commonly exercised by newspapers, broadcasting stations and others who are in the business of reporting news to the public. It is not, however, limited to these publishers. It extends to *any person* who makes an oral, written or printed report to pass on the information that is available to the general public.

RESTATEMENT (SECOND) § 611 cmt. c (emphasis added).

Oliver's mistaken position stems from his misreading of *Dameron* as stating that the "underlying principle driving the doctrine is to 'encourage[] the media to disseminate official records . . . without fear of liability for any false, defamatory material that they might contain.'" Def.'s Opp'n at 6–7 (quoting *Dameron*, 779 F.2d at 739). The quote is accurate so far as it goes, but protecting the media is not the "principle driving the doctrine." Rather, as the Circuit recognized in *Dameron*, "[t]he basis of the privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings." 779 F.2d at 739 (internal quotation marks omitted). Extending the fair report privilege to a posting in a law firm's "News & Updates" section is therefore consistent with the privilege's purpose to inform the public about "what occurs in official proceedings," *id.*

b. The self-reporting exception

The court turns next to the self-reporting exception. Oliver does not explicitly frame his argument in terms of the self-reporting exception but does so in sum and substance. He contends that Plaintiffs should not be able to invoke the privilege because they were not "merely 'repeating

10

or republishing a defamation uttered by another.'" Def.'s Opp'n at 7 (alterations omitted) (quoting *Dameron*, 779 F.2d at 739). The court has not identified any case applying the self-reporting exception under D.C. law. The court therefore turns to the *Restatement* and Maryland caselaw for guidance. *See Phillips*, 424 A.2d at 88 (citing to *Restatement (Second)* § 611 as source of law for the fair report privilege); *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983) (observing that Maryland law is "especially persuasive authority when the District's common law is silent" because Maryland is the source of D.C. common law).

Under the self-reporting exception to the fair report privilege, "[a] person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated. This is true whether the original publication was privileged or not." RESTATEMENT (SECOND) § 611, cmt. c. The self-reporting exception therefore attaches only where the claimant files a defamatory complaint, then republishes it in order to avoid liability. *See e.g.*, *Rosenberg v. Helinski*, 616 A.2d 866, 877 (Md. 1992); *Amway Corp. v. Procter & Gamble Co.*, 346 F.3d 180, 187–88 (6th Cir. 2003) (considering state statutory exception to privilege that applied to libelous publications and holding that, where the defendant publishes a report of a complaint that itself was not libelous, the self-reporting exception does not apply). In *Rosenberg*, the Maryland Court of Appeals considered whether to apply the self-reporting exception when an expert witness testified in court and afterward recounted his testimony to the news media. 616 A.2d at 869–70. The court declined to apply the exception to the expert's statements, reasoning that the fair report "privilege will be forfeited only if the defamer illegitimately fabricated or orchestrated events so as to appear in a privileged forum in the first place." *Id.* at 876. The court reasoned that it was "clear" that the exception was created "to deter those persons who, acting out of a corrupt defamatory motive, abuse the privilege accorded to fair

11

and accurate reports of judicial proceedings." *Id.* at 877. Accordingly, because "[t]here [was] not the remotest indication in the record that" the defendant testified only in order to later republish otherwise defamatory comments, the court found the self-reporting exception did not deprive the defendant of the fair report privilege's protection. *Id.*

Likewise here, Oliver has not pled facts that would support the plausible inference that Plaintiffs filed the Complaint only to later publish statements defaming him. Without allegations that the Complaint itself is defamatory or that Plaintiffs filed the Complaint with a defamatory motive, the self-reporting exception cannot apply. Plaintiffs are entitled to the protection of the fair report privilege.

          c.      <u>Actual malice</u>

Plaintiffs also argue that D.C. law requires a showing of actual malice to overcome the fair report privilege and that Oliver fails to plead malice. *See* Pls.' Mem. at 11–15; *Oparaugo v. Watts*, 884 A.2d 63, 81 (D.C. 2005) (stating that the privilege "can be defeated by the presence of malice"); *Johnson*, 271 A.2d at 698 (observing that "the defense of qualified privilege is available to appellee absent proof that the article was published with malice"). Oliver does not contest this legal framework; instead, he argues that he has adequately pled actual malice. *See* Def.'s Opp'n at 10–11. The court disagrees. Generously construed, Oliver's closest allegation to malice is that the Relman Post "deliberately omit[s]" the word "alleged" in order "to further denigrate and impugn [his] character and reputation." Am. Counterclaim ¶ 6. But Oliver fails to allege that Plaintiffs "knew or believed" that failing to include the word "alleged" in the first sentence rendered the Post false. *See Harper*, 822 F. Supp. at 829. Oliver pleads no supporting facts from which the court could reasonably infer that Plaintiffs' omission of the word "alleged" in the first sentence was malicious. Accordingly, Oliver has failed to overcome the privilege.

### B. Failure to State a Claim

Even if the fair reporting privilege did not apply, the court would dismiss Oliver's Counterclaim because he has failed to state a claim for libel or false light. *See* Pls.' Mem. at 15. At the pleadings stage, a libel claim requires the claimant to allege:

> (i) a false and defamatory statement was written by the defendant about the plaintiff; (ii) the defendant published it without privilege to a third party; (iii) the defendant exhibited some fault in publishing the statement; and (iv) the statement is actionable as a matter of law or the publication has caused the plaintiff special harm.

*Ning Ye v. Holder*, 644 F. Supp. 2d 112, 117 (D.D.C. 2009) (quoting *Messina v. Fontana*, 260 F. Supp. 2d. 173, 176–77 (D.D.C. 2003)). Similarly, Oliver's false light claim requires a showing of: "(1) publicity (2) about a false statement [or] representation . . . (3) understood to be of and concerning the [claimant], . . . (4) which places [him] in a false light that would be offensive to a reasonable person." *Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013) (quoting *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859 (D.C. 1999)). Because Oliver's defamation and false light claims both require that he allege that the Relman Post is false, the court analyzes them in tandem.

At a minimum, Oliver must assert factual allegations that give rise to the inference that the challenged publication is false. *See e.g.*, *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218–19 (D.D.C. 2012) (dismissing plaintiffs' libel claim for failure to include factual allegations of falsity); *Armstrong*, 80 A.3d at 183 (explaining that a defamation claim must include sufficient facts to prove that the challenged statements are not "substantially true"). He fails to do so. The closest that Oliver comes to pleading falsity is alleging that the Relman Post's statement that Oliver was "permitted to sexually harass *women* who lived at DCHA properties for years," Pls.' Ex. 1 (emphasis added), "creates the false impression that there are numerous women, in addition to the

13

two Plaintiffs," that he has sexually harassed, *see* Def.'s Counterclaim ¶ 7. That argument, however, falls flat. The Complaint alleges that Oliver sexually harassed at least two women. Compl. ¶ 3. Accordingly, the Post's statement that Oliver sexually harassed "women"—thus two or more—is not false. *See* Pls.' Ex. 1.

Because Oliver has not identified any other particular statements in the Relman Post that are false, the court finds that Oliver has not adequately pled falsity, and his claims for libel and false light thus fail.

## V.     CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' Motion to Dismiss, ECF No. 32, is granted.

Dated: March 26, 2021

Amit P. Mehta
United States District Court Judge